### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

_____
|
**SHARON SWEENEY,** |
       **Plaintiff** | **CIVIL CASE NO.**
| **3:17-cv-01844-WWE**
**v.** |
|
**POST UNIVERSITY, INC.,** |
**BOBBY REESE, JOHN HOPKINS** |
      **Defendants** |
| **FEBRUARY 22, 2019**
_____|

### MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Sharon Sweeny ("Plaintiff"), hereby submits this Memorandum of Law in support of her Motion to Compel Defendant, Post University, Inc. (referred to as "Defendant"), to fully and completely respond to Plaintiff's First Set of Interrogatories Nos. 1, 10, 11, 13, and 14; and Plaintiff's Requests for Production of Documents Nos. 4, 6, 9, 10, 11, 14, 16-18, 20-22, 28-31, 34, 37, 38 40-44 and 45 pursuant to Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure and D. Conn. L. Civ. R. 37(a)(2). Plaintiff also moves for an order compelling Defendant to produce documents improperly withheld on the grounds of privilege.

Despite bona fide attempts to resolve the differences concerning the subject matter of the Motion to Compel, counsel has been unable to reach an accord. (***Exhibit A***, Kapadia Affidavit). A copy of the Plaintiff's First Set of Interrogatories and Requests for Production and the Defendant's response thereto is attached as ***Exhibit B***.

## I.    SUMMARY OF FACTS

The Plaintiff was employed by Defendant from January 19, 2016 until her wrongful termination on July 27, 2017. Plaintiff began working as a consultant in the finance area and

1

shortly thereafter was offered a full time position by the CEO, John Hopkins. During Plaintiff's employment she managed the Defendant's Student Finance Department and later served as Chief Regulatory Officer. Plaintiff's work was favorably received in 2016 and 2017, particularly by the CEO. Plaintiff repeatedly received accolades from management.

In or around April, 2016, when Plaintiff became a full time employee and just prior thereto, Defendant hired Bobby Reese in the role of Chief Enrollment Services Officer. ***Exhibit C***. In this role, Mr. Reese was put in charge of admissions. In this time period, Defendant set aggressive recruitment goals to increase the student population from about 15,300 to 50,000. ***See Exhibit D***, ***Exhibit E,*** p. 3 and ***Exhibit F***, p. 2. Mr. Reese was made the head of Admissions for the online (consisting of about 95% of the student population) and the main campus students. ***See Exhibit F,*** p. 2. The majority of the Defendant's revenue was generated by the online students' payment through federal financial aid issued by the Department of Education. ***Exhibit G***.

In the summer of 2016, the focus of discussions with Reese increasingly centered on expanding student enrollment. He regularly said things like "it is all about the numbers" and "we have to get them in the door," and he said that the "plan" was to make Defendant as profitable as possible and sell it in about three years. (Complaint). During Plaintiff's employment, Reese told Plaintiff that the owners had an interest in selling Defendant and that part of his role was to make Defendant a more attractive candidate for sale. He told Plaintiff that he and Hopkins stood to financially gain from a potential sale. To date, Defendant has refused to disclose Hopkins' and Reese's compensation package which would include incentives related to a sale to which Reese referred or any documents which related to or reference setting up Defendant for a potential sale. Defendant has objected to the Plaintiff's Discovery Requests for this information.

As time passed in 2016 and 2017, the desperation to increase enrollment intensified. Under Reese's direction, changes were put in place to allow the admissions team to enroll students without having to meet any prerequisites. Ultimately, Defendant began to institute policies and procedures which were unethical and some not in the best interest of the students. Students were recruited by the Admissions staff who reported to Reese, with promises of financial aid refunds. ***Exhibit G1***. The Post online student population consists of largely economically disadvantaged individuals. Students were allowed to enroll without proof of graduation or a high school transcript, which ultimately resulted in students leaving prematurely and owing tuition. ***Exhibit H***. In many cases, students were given enticing information regarding obtaining refunds from federal financial aid before they had even enrolled at the school. Ultimately, all prerequisites that a potential student might need to enroll were removed.

Defendant eliminated the student application and put a short form on its website that allowed students to register with minimal information about their prior schooling and background. ***Exhibit I***.[1] Defendant eliminated the requirement of a writing sample as part of the application process. ***Exhibit J***. Ultimately, Defendant was unable to comply with mandatory reporting requirements of students set by the Federal Department of Education, something that eventually led to a mandate by the Department of Education requiring that Post conduct an audit of student enrollment status reporting. ***Exhibit K***. The short enrollment form allowed everyone and anyone to enroll and register for classes without providing even minimal information regarding their background. Defendant was regularly allowing students who had not graduated from high school to register for classes. ***Exhibit H***. Plaintiff had to repeatedly address this issue with Reese.

---

[1] The head of Main Campus Admissions, Kathryn Reilly, raised this issue shortly before she was fired in September, 2016. She also has a claim pending against Defendant in the Connecticut federal district court.

3

Plaintiff learned that Reese had allowed the federal Department of Education logo to be used on Post documents without the Department of Education's permission to enhance the Defendant's marketability, something that is a violation of Department of Education policies and illegal. Plaintiff engaged in speech to express opposition to this practice. To date the communications regarding this issue have not been produced. The Requests seeking this information are part of this Motion.

Defendant invested millions of dollars to purchase leads with individuals' contact information. The admissions staff was then instructed to contact the individuals on the list (potential students) repeatedly, day and night, to convince them to enroll. Plaintiff learned that students were being called multiple times a day. See ***Exhibit L*** (see in particular email starting on second page of prospective student who describes the harassment). Reese attempted to convince Plaintiff to have financial aid staff call students not just during the day but in the evenings as well and repeatedly in order to force them to complete their financial forms. In one case, an admissions staff, due to the pressure to enroll students, told a student to lie on his financial aid application regarding his income. (Complaint, Par. 21).  Plaintiff became aware of Admissions staff texting students the wrong federal financial aid deadlines in order to pressure them to submit their forms, something that the federal Department of Education does not allow. Institutions such as Defendant are required to communicate the deadlines set by the Department of Education. This is another matter that Plaintiff had to address. ***Exhibit M***.

The team responsible for working with students with respect to their financial aid forms fell under Plaintiff's supervision. The Department of Education regulations set prerequisites students had to meet in order to qualify for federal financial aid. Institutions such as Defendant are prohibited from awarding federal financial aid to students who did not meet the prerequisites

4

(i.e. when students were in default on other student loans, students who did not have proof of graduation, students who were required to file a federal tax return but did not do so).[2] Plaintiff had policies in place consistent with the Department of Education's prerequisites. Plaintiff and her staff were constantly pressured by the larger admissions group, who were under Reese's control, to make financial aid decisions that were inconsistent with federal regulations of the Department of Education.

As 2017 progressed, the desperation to increase the enrollment numbers heightened even further because the admissions goals were not met for the spring and summer session. In a conversation with Plaintiff in or around June of 2017, Reese assigned blame for the stagnant enrollment numbers to the financial aid office, which Plaintiff managed. ***Exhibit N***. He indicated that if all students had been "yeses" for federal aid approval, and a financial aid application had been submitted for each and every potential student, Defendant would have met enrollment goals. Reese directed Plaintiff's department to assign a positive ATP ("ability to pay") designation on financial aid applications for each and every applicant / student, irrespective of whether or not the prerequisites to the financial aid eligibility established by the federal government were met. Plaintiff expressed opposition to the practice of designating all students as ATP. As these discussions continued, Plaintiff instructed her staff to create a report which showed the circumstances that disqualified students from being eligible for financial aid (i.e. default on another loan, failure to graduate from high school, failure to pay taxes). Plaintiff reviewed this report with the CEO in July, 2017. A few days later, the CEO indicated that he

---

[2] Other reasons for not being eligible for federal aid include males who did not register with selective service, students who were not citizens or eligible non-citizens, students identified by the Dept. of Ed has having unusual enrollment history.

wanted to schedule a dinner meeting with her and Reese to discuss why they were not "getting along."

On July 26, 2017, at the dinner meeting, Reese, Hopkins and an HR representative confronted Plaintiff with unsubstantiated complaints of bullying from unidentified employees. In response to Plaintiff's inquiries, the HR representative was forced to admit that these were nothing more than "rumblings," no formal complaints were ever received and there was never any investigation of them. Plaintiff was also accused of being condescending at a meeting the day prior involving military students. Those who attended the meeting had told Plaintiff that the meeting had gone quite well. **_Exhibit O_**. These criticisms were completely inconsistent with the positive feedback Plaintiff had consistently previously received and were designed to intimidate and bully Plaintiff into relaxing the financial aid rules. **_Exhibit P_**. The next day, after a conversation with the CEO, Plaintiff received a phone call from HR accusing her of resigning in a discussion with the CEO, which she had not done. HR ignored Plaintiff's assertions that she had not resigned and insisted on walking Plaintiff out of the building.

Just prior to Plaintiff's termination, she learned that Academic Advising, which reported to Reese, had counseled a student to continue in a bachelors program with the intention of later withdrawing the student from the program once the financial aid was received. The student had no longer qualified for federal aid because he only had one class left on his associate degree. This student had no intention of furthering his education. The student was told by an Academic Advisor to enroll in the bachelors program so he could obtain additional financial aid. Plaintiff was scheduled to address this issue the day after her termination. The documents related to this issue have not been produced.  (Complaint, Par. 55).

Plaintiff alleges that her employment with Post University was wrongfully terminated because she expressed opposition to the unethical and illegal practices and that her speech was an exercise of free expression, and was guaranteed by the First Amendment to the United States Constitution and Sections 3, 4 and 14 of the First Article of the Constitution of the State of Connecticut. Plaintiff alleges four claims including a claim under C.G.S. § 31-51(q), as well as common law claims of tortious interference with business/employment relationship and intentional and negligent infliction of emotional distress.

## II.   LEGAL STANDARD

### A.   Scope of Discovery

Discovery is appropriate of any non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The discovery provisions of the Federal Rules of Civil Procedure are "designed to achieve disclosure of all the evidence relevant to the merits of a controversy." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989). Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. "The party resisting discovery bears the burden of showing why discovery should be denied." *Cole Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009); *see also*

*Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 71 (D. Conn. 2004) (holding that the party opposing discovery bears the burden of showing why discovery should be denied).

"[T]he definition of relevance in the universe of discovery is broader than that in evidence. With this in mind, courts have taken the position that relevance, in the realm of discovery, ought to be broadly and liberally construed." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005). "It is well-settled that discovery rules "are to be accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165 (3rd Cir. 2003) *citing Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964). The scope of discovery is not confined to "issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues." *Flanagan v. Travelers Insurance Company*, 111 F.R.D. 42, 45 (W.D.N.Y. 1986) *quoting Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978). "In the Second Circuit, this obviously broad rule is liberally construed." *Ruran v. Beth El Temple of West Hartford*, 226 F.R.D. 165 (D. Conn. 2005).

## B.      Liberal Standard for Discovery in Employment Cases

It is well-settled that employment cases call for a particularly broad standard of discovery. Accordingly, Courts have treated discovery requests in employment discrimination cases liberally. *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *See also Finch v. Hercules, Inc.*, 149 F.R.D. 60, 62 (D. Del. 1993). "[T]he necessity for liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized." *Id. citing Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287, 295 (D. Del. 1975). In such cases, the plaintiff must be given access to information that will assist the plaintiff in establishing the existence of the

alleged discrimination. *Runyan v. Sybase, Inc*., 1993 WL 377062 (E.D. Pa. 1993); *Flanagan v. Travelers Insurance Company*, 111 F.R.D. 42, 45 (W.D.N.Y. 1986). In this case, as in most employment cases, the touchstone for relevance is whether the fact in question assists in revealing the intent or motive of the defendant. In *Sony Corporation of America, et al. v. Soundview Corporation of America*, 2001 WL 1772920 (D. Conn. 2001), the Court reviewed relevance in those terms and stated that:

> Because "[i]ntent need not, and rarely can, be proven by direct evidence," *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989), establishing the "intent" element of an inequitable conduct defense "requires the fact finder to evaluate all the facts and circumstances in [the] case." *Paragon Podiatry Lab.*, 984 F.2d at 1190 (citation omitted)(emphasis added). "Intent" is a state of mind and is a subjective element that is usually established by inferences. *Id*. at 1189–90. Similarly, a "motive" is defined as "[s]omething, especially willful desire, that leads someone to act." BLACK'S LAW DICTIONARY 1034 (7th ed. 1999). Because a motive demonstrates the probability of ensuing action, it is always relevant. JOHN HENRY WIGMORE, EVIDENCE § 118 (Best Supp. 2001)(emphasis added). Furthermore, state of mind is a subjective element that is usually determined by inferences. *Sony Corporation of America,* 2001 WL 1772920 at *2.

In another employment case, Magistrate Judge Smith of the Court stated that "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005) (emphasis in original) (citations and quotations omitted). Thus, Plaintiff is entitled to obtain discovery of all matters in the circumstances of the case that may bear upon the intent or motive of Defendant in this case.

### C.       Enforcing Rules of Discovery

Rule 37 of the Federal Rules of Civil Procedure sets forth the Court's procedures for enforcing the rules of discovery when a party has failed to comply with proper discovery requests. Rule 37(a)(3)(B) states, in pertinent part:

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . (iii) a party fails to answer an interrogatory submitted

under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

"For the purposes of [Fed. R. Civ. P. 37(a)], an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(C).

### D.   Plaintiff's Discovery Requests

Defendant initially responded to Plaintiff's First Set of Discovery on May 11, 2018. (***Exhibit B***). Plaintiff had phone conferences with counsel for Defendant regarding Defendant's outstanding discovery responses to Plaintiff's Interrogatories and Requests for Production. (***Exhibit B***). Defendant served an amended response on May 31, 2018 (***Exhibit B***), but failed to cure the deficient responses and produce a privilege log as required by the Federal and Local Rules. In the summer of 2018, the Defendant transferred the matter to the present defense counsel. Counsel have made progress with respect to written discovery but were unable to resolve all issues.

In order to prove motive, Plaintiff needs to show the jury the entirety of the aggressive plan to increase enrollment. It is the desperation to increase enrollment that ultimately led to the unethical practices that Plaintiff was forced to address.

## III.   ARGUMENT

### A.   Specific Discovery Requests and Interrogatories at Issue

#### <u>Interrogatory No. 1</u>

**Interrogatory No. 1:** Please identify all persons who answered these Interrogatories and Requests for Production of Documents or who provided information or responses used in responding to each of these interrogatories. If more than one person provided information for a single interrogatory, please identify with precision the information provided by each person. In identifying said persons, please provide the following information pursuant to Local Rule 26(c)(3), namely, "the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment."

**Answer:** Raymond Lagasse, Assistant Director, Human Resources, Post University.

Raymond Lagasse was not involved in the underlying events and lacks personal knowledge regarding such events. On the other hand co-defendants, Bobby Reese and John Hopkins, and others, have personal knowledge of the underlying events, but appear not to have been consulted. They are not listed as having participated in responding to the Interrogatories. The Court should order that the Defendant answer with a representative who has personal knowledge and able to testify that a fact is correct. This is a routine question that is asked by way of interrogatory so that the counsel of the serving party can identify the correct witnesses for deposition.

**Interrogatory No. 10 / Produc Req. No. 4**

**(Complaints against Plaintiff)**

**Interrogatory No. 10:** State whether any complaint, whether formal or informal, written or oral, has been made against Plaintiff by any employee of Defendant, and if so, identify or state the following:
   a. the nature of the complaint;
   b. the identity of the individual who made the complaint;
   c. the date on which such complaint was made;
   d. whether an investigation occurred, and if so, who handled the investigation and what were the results of the investigation; and
   e. all documents related to, reflecting or concerning the complaint and any investigation thereof including any outcome report.

**Answer:** Donna Seminoro, Associate Director of the Office of Student Finance reported that Plaintiff was a bully who told her that she was overpaid and worthless on numerous occasions. Former Registrar, Mary Ann D'Entremont, stated that the reason she was leaving Post University was that she worked with Plaintiff, who was a bully.

4. Please produce all documents identified in response to Interrogatory 10 that reflect, relate to or concern complaints against Plaintiff.

**Answer:** "Not Applicable."

11

Plaintiff was accused of having complaints made against her, as discussed above.

Defendant does not object to Interrogatory No.10, but fails to completely respond to the

Interrogatory subsections regarding the date of the complaints, whether an investigation

occurred, and the result of the investigation. Defendant fails to identify any documents related to

such complaint. The Court should order Defendant to provide a complete answer to Interrogatory

No. 10 and produce responsive documents as part of its answer to Request No. 4.

### Interrogatory No 11 and Request for Production No. 6

### (Reasons for change in Management)

**Interrogatory No. 11:** Please state the reason for the management change at Post University that led to the hiring of John Hopkins and Bobby Reese, and specifically, whether they were recruited to make Post University market ready for a sale.

**Objection and Answer:** Defendant objects to this request for the reason that any management strategy documents sought by Plaintiff are proprietary and not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues.  Moreover, the term "concern, reflect or relate to the management change" is overly broad and unduly burdensome. Subject to and without waiving those objections, Mr. Hopkins and Mr. Reese were not recruited to make Post University marketable and ready for a sale. The reason was that Post University's CEO, Tom Samph, decided to retire.

**Request for Production No. 6:** Please produce all documents that concern, reflect or relate to the management change as identified in response to Interrogatory No. 11

**Objection:** Defendant objects to this request for the reason that the management strategy documents sought by Plaintiff are proprietary and not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Moreover, the term "concern, reflect or relate to the management change" is overly broad and unduly burdensome. Responsive materials are being withheld on the basis of this objection.

Defendant is withholding documents based on the objections that these are proprietary

and not relevant. There is a protective order in place that resolves any confidentiality concerns.

12

Defendant's management change is relevant to the plaintiff's retaliation claim. As noted above, Reese told Plaintiff that there was a plan in place to increase enrollment numbers in order to make Defendant an attractive candidate for sale. He also told Plaintiff that he and Hopkins stood to financially benefit from any sale. He told Plaintiff that this was the reason for the management change. Defendant must answer and produce documents because as Rule 26(b)(1) of the Federal Rules of Civil Procedure explains: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." The information sought will assist Plaintiff in proving motive to the jury.

Defendant's objection to the plaintiff's Request for Production No. 6, based on "management strategy" and "proprietary" documents should be overruled because it is an invalid objection. *Rogue Wave Software, Inc. v. BTI Systems Inc.*, 2017 WL 4712425, at \*9 (S.D.N.Y., 2017) (overruling defendants' objections based on the attorney-client privilege and the non-existent business strategy privilege). Moreover, there is a protective order in place which alleviates any concerns regarding confidentiality.

### Interrogatory Nos. 13, 14 and Request for Production Nos. 40-43

**(Reese and Hopkins' compensation, job assignment and reason for hiring)**

**Interrogatory No. 13:** Please describe the compensation, including salary and benefits, given to Bobby Reese and John Hopkins by Post University and describe specifically any compensation or benefit for which Reese was eligible in the event of a sale of Post University.

**Objection and Answer**: Defendant objects to this interrogatory for the reason that it requests confidential salary and benefit information of Defendant's officers, which is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Subject to and without waiving that objection, there are no additional compensation or benefits that Bobby Reese would receive in the event Post University was sold.

**Interrogatory No. 14:** Please describe the compensation, including salary and benefits, given to John Hopkins by Post University and describe specifically any compensation or benefit for which Hopkins was eligible in the event of a sale of Post University.

**Objection and Answer**: Defendant objects to this interrogatory for the reason that it requests confidential salary and benefit information of Defendant's officers, which is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Subject to and without waiving that objection, there are no additional compensation or benefits that John Hopkins would receive in the event Post University was sold.

**Request for Production No. 40:** Produce all documents that reflect or concern John Hopkin's job description, work assignments, job duties and compensation for which he was hired by Post University.

**Objection:** Defendant objects to this interrogatory for the reason that it requests information regarding Defendant's CEO which is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objection.

**Request for Production No. 41:** Produce all documents which reflect, concern or relate to the basis for the decision to recruit and hire John Hopkins.

**Objection:** Defendant objects to this interrogatory for the reason that it requests confidential and proprietary strategic information regarding Defendant's CEO which is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objection.

**Request for Production No. 42:** Produce all documents regarding Bobby Reece's job description, work assignments, job duties and compensation for which he was hired by Post University.

**Objection and Answer:** Defendant objects to this interrogatory for the reason that it requests information regarding Defendant's COO which is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objection.

**Request for Production No. 43:** Please produce all documents which reflect, concern or relate to the basis for the decision to recruit and hire Bobby Reese.

**Objection:** Defendant objects to this interrogatory for the reason that it requests confidential and proprietary strategic information regarding Defendant's COO

which is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objection.

Defendant is improperly withholding documents to Plaintiff's Request for Production Nos. 40-43 erroneously claiming "proprietary strategic information." *See* discussion above under Interrogatory No. 11 and Production Request No. 6. There is no proprietary privilege that exists. And, Defendant's objections to Interrogatory Nos. 13 and 14, on the basis of confidentiality of Reese's and Hopkin's salary and benefit information, are similarly meritless. Plaintiff intends to prove that there was a financial motive for John Hopkins and Bobby Reese to increase enrollment by illegal means in order to increase the value Post University for a potential sale. This information is directly relevant to the case and important for the jury to understand. *Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 292 (D. Conn. 2007) ("[T]he Court is mindful that a plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pre-textual should not normally be denied the information necessary to establish that claim.")(internal citations & quotations omitted); *Trilegiant Corp. v. Sitel Corp.,* 272 F.R.D. 360, 364-65 (S.D.N.Y. 2010) (finding that information regarding other contracts, statements of work, and manuals utilized in transactions with other contractors was relevant since it could further the interpretation of the parties' contract).

Defendant is hiding behind meritless objections to thwart the discovery process.

## Request for Production Nos. 9 and 10

### (Personnel files of co-defendants, Reese and Hopkins)

**Request for Production No. 9:** Produce the personnel files of Bobby Reece as defined in Section 31-128a of the Connecticut General Statutes.
**Objection**: Defendant objects to this request for the reason that the personnel files of Defendant's officers are confidential and not relevant to any party's claim or defense and are not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the

discovery in resolving the issues. Responsive materials are being withheld on the basis of this objection.

**Request for Production No. 10:** Produce the personnel files of John Hopkins as defined in Section 31-128a of the Connecticut General Statutes.
**Objection**: Defendant objects to this request for the reason that the personnel files of Defendant's officers are confidential and not relevant to any party's claim or defense and are not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive materials are being withheld on the basis of this objection.

Defendant is withholding the personnel files of co-defendants, Reese and Hopkins. The main argument Defendant proffers against the discoverability of these records is that they are confidential, not relevant to any party's claim or defense and are not proportional to the needs of the case. As discussed above, information regarding the compensation arrangements of Reese and Hopkins is relevant. Defendant's objections ignore the standing protective order in place that covers any confidentiality concerns. Defendant should produce these documents because personnel files are regularly and routinely disclosed in employment matters.

Courts frequently compel the personnel files of employees in employment discrimination suits, despite privacy concerns, pursuant to C.G.S.A. §§ 31-122 to 31-128. As the Southern District of New York held in *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376 at 377 (S.D.N.Y. 1996), "the court is not prepared to allow defendants to determine what information is necessary for the plaintiffs to receive." Personnel files are regularly allowed to be discovered in employment cases for a variety of reasons. *Flanagan v. Travelers Insurance Company*, 111 F.R.D. 47; *Jones v. Hamilton County Sheriff's Dept.*, 2003 WL 21383332 (S.D.Ind. 2003) (personnel file of decision maker); *Fox-Martin v. H.J. Heinz Operations*, 2003 SL 23139105 (D. Kan. 2003) (personnel file of decision maker); *D'Antoni v. Roach*, 1997 WL 627601 (E.D. La. 1997) (In plaintiff's Section 1983 suit against city for harm caused by police officers, plaintiff's

allegation that harm was caused by inadequate training and supervision by city certainly entitled

plaintiff to obtain personnel files of officers.); *Jones v. Hamilton County Sheriff's Dept.*, 2003

WL 21383332 (S.D.Ind. 2003); *Fox-Martin v. H.J. Heinz Operations*, 2003 SL *23139105 (D.*

*Kan. 2003); Cason v. Builders FirstSource-Southeast Group, Inc., 159* F.Supp.2d 242

(W.D.N.C. 2001).

Plaintiff is entitled to the personnel files of co-defendants, Reese and Hopkins. Their

background is relevant to this case. Their compensation is also relevant, particularly since

Plaintiff intends to prove that they were given an incentive to increase enrollment and sell Post

University. Their job descriptions are also relevant as are the reasons for their hiring. Thus, these

files are discoverable and the Court should order Defendant to produce all contents in the

personnel files as demanded by Plaintiff, including all complaints and statements.

## Request for Production No. 11

### (Decision to terminate Plaintiff)

**Request for Production No. 11:** Produce any and all documents that concern,
refer or relate to the decision to terminate Plaintiff's employment with Defendant,
including, but not limited to, correspondence, letters, emails, notes, meeting notes,
agendas, and calendar entries.
**Objection and Answer:** Defendant objects to this request to the extent that it
requests attorney work product or documents governed by the attorney client
privilege. Responsive materials are being withheld on the basis of this
objection. Subject to and without waiving those objections, see documents
produced as part of Defendant's Responses to Initial Discovery Protocols,
dated January 18, 2018.

Defendant is withholding documents regarding Plaintiff's termination on the basis of

attorney-client and work product privilege. Defendant has not produced a privilege log.

Defendant does not identify any responsive documents by bates numbers. Defendant has raised

objections that are not supportable. Defendant has to provide a legitimate non-retaliatory / non-

discriminatory reason to justify the termination decision. Therefore, the documents reflecting the

termination decision are relevant and discoverable.

On the last day of Plaintiff's employment, she told HR that she had not resigned. Yet, HR walked her out of the building. The Plaintiff is entitled to see communications regarding her departure. Forcing an employee to leave by pretending that the employee has resigned, when the employee states that she has not, is tantamount to a termination. Plaintiff is entitled to see how Defendant's representatives characterized her termination. No communications on this point have been produced. Defendant points to hundreds of documents that are not responsive.

As for the claim of privilege, no privilege log has been produced to date. Given the length of time Defendant has had to produce a privilege log, their privilege claim should be deemed waived by the Court. *Kenny v. Woods Restoration Services, Inc.* 2007 WL 806055 (Conn. Super., Miller, J.) ("With respect to any claim of attorney-client or work product privilege, defense counsel shall prepare a privilege log identifying any information or document which they maintain is protected by a privilege.").

### <u>Request for Production Nos. 14 and 20</u>

### (Sale of Post University)

**Request for Production No. 14:** Produce all documents that concern, refer or relate to the potential sale of Post University. This request is limited to 2015 to the present.

**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Additionally, the term "concern, refer or relate to the potential sale" is overly broad. Responsive documents are not being withheld on the basis of the objections. Subject to and without waiving those objections, there has been no such potential sale.

**Request for Production No. 20:** Produce all documents which reflect any plan or possibility of the sale of Defendant or of making Defendant more marketable buyer from 2015 to the present.

18

**Objection:** Defendant objects to this request for the reason that it requests confidential,  propriety documents reflecting business strategy that are not relevant to any  parties' claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy,  the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Additionally, the term "which reflect any plan or possibility of the sale of Defendant or of making Defendant more marketable to a buyer" is overly broad. Responsive documents are being withheld on the basis of the objections.

Defendant is withholding documents based upon confidentiality concerns and Defendant asserts a baseless, non-existent business strategy privilege. There is a standing protective order in place, and thus, any concerns about confidentiality are not valid. Plaintiff seeks documents related to objective of selling Defendant, preparing Defendant for sale or formulating a plan to sell Defendant. As discussed above, this information is relevant to Plaintiff's claim of retaliation.

### Request for Production Nos. 16, 17, and 18

#### (Enrollment and bad debt accounts)

**Request for Production No. 16:** Produce documents which reflect the entry of online students without a high school transcript.
**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Additionally, the term "which reflect" is unreasonably vague and overbroad. Depending on the meaning of the term "which reflect" as used in then request, responsive documents may have been withheld on the basis of these objections. Subject to and without waiving those objections, see spreadsheet entitled "EC Notes" produced herewith. (DEF 615- DEF 619).

Defendant tracked each and every student that enrolled without a high school transcript or failed to provide "proof of graduation," referred to as "POG."  Plaintiff is aware that Defendant can easily generate a report reflecting this information. This report

will assist the Plaintiff in showing the jury that Defendant under Reese's leadership in

admissions removed the most basic requirement of attending college. This was part of the

desperation to increase enrollment. The student were enrolled and permitted to start

classes without proof of graduation documents / transcripts. Ultimately, those students

who could not meet "pog" requirement were rendered ineligible for financial aid. Many

of these students left the Defendant with debt that they did not anticipate having to pay

and did not have the resources to pay. They were led to believe that they would receive

financial aid. Plaintiff will limit this request to the time period of 2016 and 2017.

> **Request for Production No. 17:** Produce documents which reflect, relate to or
> concern the removal of online students from Post for the last four years and/or the
> reason for the removal.
> **Objection:** Defendant objects to this request for the reason that it requests
> enrollment documents that are not relevant to any party's claim or defense and that
> are not proportional to the needs of the case, considering the importance of the
> issues at stake in this litigation, the amount in controversy, the parties' relative
> access to information and resources, the burden and expense of the proposed
> discovery and the importance of the discovery in resolving the issues. Responsive
> documents are being withheld on the basis of the objection.

The objections are without merit and should be overruled by the Court. Plaintiff is

aware that the information sought is maintained by Defendant and can easily be made

available to Plaintiff. Defendant has the ability to generate reports which will show this

information. Again, Plaintiff seeks to show the jury the entirety of the enrollment scheme

in order to prove motive and pretext. The large number of students dropping out is part of

the story the jury should hear. The admissions personnel were engaging in unethical

conduct to make the enrollment numbers bigger. A large number of students were

dropping out because they should never have been permitted to enroll in the first place.

Plaintiff seeks to show the jury the drop out numbers and the reasons thereof. ***Exhibit O.***

## *Production Request No. 18*

**Request for Production No. 18:** Produce documents which reflect online student bad debt accounts for the last four (4) years.
**Objection:** Defendant objects to this request for the reason that it requests financial documents that are not relevant to any party's claim or defense and that are not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objection.

Defendant referred to "bad debt" as a student who incurred tuition expenses but did not have the ability to pay the debt. Under the aggressive recruitment plan, students who did not have the ability to pay for their education were permitted to enroll at the school even though their circumstances disqualified them from receiving financial aid. Admissions personnel assured the students that financial aid would cover their tuition so that they would enroll and start classes. By the time the students learned that they were not eligible for financial aid, they had already incurred tuition charges. Most of these students did not have the ability to pay for the tuition. The objections are meritless. The Plaintiff does have access to this information. On the other hand, Defendant can easily generate a report that will show this information. **_Exhibit R_** (shows graph from 2016 which includes bad debt data). Plaintiff will limit the time period to 2016 and 2017.

Again, Plaintiff seeks to show the entirety of the aggressive recruitment scheme to the jury. The bad debt increase is a part of the story. Defendant is withholding documents regarding enrollment numbers and bad debt accounts on specious grounds such as "business strategy" claiming that the documents are confidential and proprietary. There is a protective order in place. Defendant has not provided any valid justification for the

objections it has raised. Therefore, the Court should order the Defendant to produce these documents.

### Request for Production No. 21
### (Plaintiff's email communications)

**Request for Production No. 21:** Produce all email communications to or from Plaintiff on which she was copied six months prior to the separation of employment. This request also includes email communications from Plaintiffs laptop.

**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, proprietary, legal and financial documents that are not relevant to any party's claim or defense and that are not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objection. Subject to and without waiving those objections, see emails produced herewith. (DEF 1371-DEF 1529). Defense counsel will work with Plaintiff's counsel to agree upon reasonable search terms for a search of Plaintiff's emails.

Defendant is withholding responsive documents based upon boilerplate objections. Plaintiff seeks to review the email communications from the last six months of her employment. Defendant has not objected on the basis of any cognizable privilege and should be ordered to produce all email communications with the Plaintiff. The Court should overrule the objections and order a full and complete response for all of Plaintiff's emails. The Plaintiff has limited the time period in order to avoid the hit or miss with use of search terms. Plaintiff's counsel will take on the burden of reviewing the communications. Plaintiff believes that the communications will assist in proving the retaliation claim. The email communications will reflect her protected speech. Defendant is withholding documents on many key issues. The Court should order the disclosure sought.

### Request for Production Nos. 22, 28, 29 and 30
### (Defendant's email communications)

22

**Request for Production No. 22:** Please produce all email communications to or from Hopkins on which he was copied which refers to or relates to Plaintiff in any manner in the last six months of Plaintiffs employment.

**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, in addition to documents produced as part of Defendants' Responses to Initial Discovery Protocols, dated January 18, 2018, see documents produced herewith. Additionally, Defense counsel will work with Plaintiff's counsel to agree upon reasonable search terms for a search of John Hopkin's emails. (DEF 1371-DEF 1529).

**Request for Production No. 28:** Please produce all email communications to or from Reese on which he was copied reflecting or relating to Plaintiff in any manner in the last six months of Plaintiffs employment.

**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, in addition to documents produced as part of Defendants' Responses to Initial Discovery Protocols, dated January 18, 2018, see documents produced herewith. Additionally, Defense counsel will work with Plaintiff's counsel to agree upon reasonable search terms for a search of Bobby Reese's emails. (DEF 1371-DEF 1529).

**Request for Production No. 29:** Please produce all email communications to or from Bobby Reese or John Hopkins, or on which they were copied, which reflect increasing enrollment or admissions to Post University.

**Objection:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

**Request for Production No. 30:** Please produce all email communications to and from Whisenhant on which she was copied referring to or relating to Plaintiff in any manner in the last six months of her employment.

**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, in addition to documents produced as part of Defendant's Responses to Initial Discovery Protocols, dated January 18, 2018, see documents produced herewith. Additionally, Defense counsel will work with Plaintiff's counsel to agree upon reasonable search terms for a search of Vicki Whisenhant's emails. (DEF 1371-DEF 1529).

Defendant is withholding documents, but does not identify which documents are being withheld. Defendant has not disclosed how the search for responsive email communications or other documents was conducted. Defendant states that "[r]esponsive documents are being withheld on the basis of the objections," which are "confidential, propriety documents reflecting business strategy that are not relevant." Defendant subsequently reiterates the same bates numbers identified in response to Request No. 21, and improperly withholds documents based upon a "business strategy." *Rogue Wave Software, Inc. v. BTI Systems Inc.*, 2017 WL 4712425, at *9 (S.D.N.Y., 2017). These email communications are directly relevant to Plaintiff's claims regarding the Defendant's motive for terminating the Plaintiff. The Court should order Defendant to produce all withheld documents because Defendant's confidentiality concerns are a non-issue given the Court's Protective Order.

### Request for Production No. 31
### (Proximity to Financial Aid Dept.)

**Request for Production No. 31:** Produce all documents reflecting, concerning or relating to moving the financial aid employees in close proximity to the admissions personnel.

**Objection:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not

24

relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues.  Responsive documents are being withheld on the basis of the objections.

During the last few months of Plaintiff's employment, Reese pushed hard to have large admissions staff sit in close proximity to the financial aid counselors. Many financial aid personnel felt that they were being pressured by the larger admissions staff to approve students for financial aid even though they did not meet the Department of Education standards for financial aid. Defendant must be ordered to produce these documents. Defendant's business strategy objection is without merit because there is a Standing Protective Order in place. The Court should overrule Defendant's objection and order Defendant to produce the responsive documents.

<u>**Request for Production Nos. 34 and 45**</u>
**(ATP Policy / communications with Reece about the ATP policy)**

**Request for Production No. 34:** Produce all documents related to the ATP Policy, including but not limited to documents regarding where the ATP Policy is stated, how it is applied, any variances or modifications, and the prerequisites for an ATP designation for Post University's students. This request limited to 2015 to the present.
**Objection:** Defendant objects to this request for the reason that the term "all documents related to the ATP Policy" is overly broad and not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues.  Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, copies of the ATP policy are produced herewith. (DEF 1353 – DEF 1354).

**Request for Production No. 45:** Please produce any and all documents to or from Bobby Reese or on which he was copied that reflect, concern or relate to ATP designation policy or giving any student or potential student an ATP designation.

**Objection and Answer:** Defendant objects to this request for the reason that the term "all documents . . . . related to that reflect, concern or relate to ATP designation" is overly broad, unreasonably vague and not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, a copy of the ATP policy is produced herewith. (DEF 1353-DEF 1354).

Attached hereto as **_Exhibit S_** is a copy of two ATP policies. The second policy is in draft. There is no final policy that has been produced. Furthermore, all communications regarding creation of the policy have also not been produced.

Reese was pressuring Plaintiff to relax the standards that were dictated by the Department of Education. The attached ATP policies reflects the prerequisites that the Department of Education required students to meet for eligibility for financial aid. Clearly, Defendant has not complied with the Request. Defendant readily admits that it is withholding documents.

**Request for Production No. 37**
**(Dinner Meeting on July 26, 2017)**

**Request for Production No. 37:** Produce all documents which concern, refer or relate, in any manner to the dinner meeting on July 26, 2017, including, but not limited to, any agenda, handwritten notes, emails, calendar invites, memos and letters.
**Objection and Answer:** Defendant objects to this request to the extent that it requests attorney work product or documents governed by the attorney client privilege. Responsive materials are being withheld on the basis of this objection. Subject to and without waiving those objections, see documents produced herewith. (DEF 1371- DEF 1529).

Defendant has not produced any documents regarding this specific dinner meeting on July 26, 2017 that led to Plaintiff's termination. The documents identified are not

responsive. They do not include communications leading to the dinner meeting on July 26, 2018 or those thereafter.

It is Plaintiff's position that this dinner meeting was a set up to send the message to Plaintiff that not being on board with the aggressive enrollment plan could lead to adverse consequences with respect to her employment. That is the reason Hopkins brought up an unsubstantiated rumor regarding bullying and fabricated that Plaintiff was condescending at a meeting for military students. The communications leading to this meeting are certainly relevant. They may reflect the motive of Defendant's representatives. Defendant asserts attorney-client privilege and work product, but has not to date produced any privilege log. Plaintiff requests that the Court deem any claim of privilege waived at this point and order Defendant to provide a full and complete response.

**Request for Production No. 38**
**(Meeting in July 2017 regarding military admissions)**

**Request for Production No. 38:** Produce any all documents related to a staff meeting during July of 2017 concerning military admissions to Post University, including, but not limited to, complaints about the Plaintiff.
**Answer:** Defendant objects to this request to the extent that it requests attorney work product or documents governed by the attorney client privilege. Responsive materials are being withheld on the basis of this objection. Subject to and without waiving those objections, see document produced as part of Defendant's Responses to Initial Discovery Protocols, dated January 18, 2018.

Defendant is withholding documents based upon attorney-client privilege, but has not produced a privilege log.  It is unreasonable to require Plaintiff to comb through hundreds of documents to find a response. Defendant's untimely privilege claim should be waived. Defendant accused Plaintiff of acting inappropriately at a meeting relating to military students. The information sought is relevant and discoverable. As discussed above, Plaintiff was told at the July 26 dinner meeting that she was "condescending" at a military student meeting. The

feedback Plaintiff had received regarding the meeting was quite the opposite (***Exhibit O),*** and

completely inconsistent with the general positive feedback she received regarding her

performance (***Exhibit P***).  Plaintiff is entitled to have all information regarding this issue so she

can prove that Defendant directed false accusations to her in order to force her to relax the

financial aid standards.

### Request for Production No. 44
### (Expanding enrollment)

**Request for Production No. 44:** Please produce any and all documents from
2015 to the present which reflect, concern or relate to a desire, policies or
practices to expand enrollment numbers.
**Objection and Answer:**  Defendant objects to this request for the reason that
it requests enrollment related documents that are not relevant to any party's
claim or defense and that are not proportional to the needs of the case,
considering the importance of the issues at stake in this litigation, the amount
in controversy, the parties' relative access to information and resources, the
burden and expense of the proposed discovery and the importance of the
discovery in resolving the issues. Additionally, the request for "any and all
documents which reflect, concern or relate to a desire" is overly broad and
unduly burdensome. Responsive documents are being withheld on the basis of
the objection. Subject to and without waiving those objections, see documents
produced herewith. (DEF 551, DEF 622-DEF 1352).

The documents identified are not all responsive. Plaintiff is willing to limit this request to

2016 and 2017. During this time period, Defendant hired over a hundred admissions counselors

(the individuals who called, texted and emailed students day and night) to convince them to

enroll at Post. *See **Exhibit T***, reflecting the plan to hire 235 admissions counselors for the

aggressive recruitment plan.  Plaintiff seeks for the Defendant to produce documents which

reflect on a monthly basis the admissions counselors hired including their current employment

status. Plaintiff also seeks the notes of contact that the counselors were required to maintain.

Defendant only disclosed 1 page. *See* attached ***Exhibit L.***

Plaintiff also seeks documents which reflect the increase in expenses on a monthly basis starting in March, 2016 when the plan was put in place. Defendant's payroll and marketing expenses increased dramatically as part of the new enrollment plan. The expenses led to the desperate and unethical enrollment tactics. Plaintiff seeks documents which reflect the operating expenses on a monthly basis up until the time of Plaintiff's termination in July, 2017.

The above will assist the Plaintiff in showing the jury the entirety of the aggressive recruitment plan.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court (1) grant Plaintiff's Motion to Compel and order Defendant, to fully and completely respond to Plaintiff's First Set of Interrogatories Nos. 1, 4, 10, 11, 13, 14; and Plaintiff's Requests for Production of Documents Nos. 4, 5, 6, 9, 10, 11, 14, 16-18, 20-22, 28-31, 34-39, 40-46, and 51; (2) order Defendant to produce documents withheld on the grounds of privilege; (3) and, grant such other and further relief that this Court deems just and proper.

PLAINTIFF

By:   <u>/s/ Heena Kapadia 11869</u>
       Heena Kapadia (ct11869)
       Law Office of Heena Kapadia
       572 White Plains Road
       Trumbull, Connecticut 06611
       Phone: 203-288-8006
       Fax:     203-261-8420
       <u>hkapadia@heenakapadialaw.com</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2019, Plaintiff's Memorandum of Law in Support of Motion to Compel was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s_____
Heena Kapadia